JUDGE FURMAN

**15 CV 01092**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BAREFOOT CONTESSA PANTRY, LLC , INA
GARTEN, and INA GARTEN, LLC,

Plaintiffs,

v.

AQUA STAR (USA) CO., CONTESSA
PREMIUM FOODS, INC., O.F.I. IMPORTS, INC.,
and RED CHAMBER CO.

Defendants.

---

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**



Plaintiffs Barefoot Contessa Pantry, LLC, Ina Garten ("Chef Garten"), and Ina

Garten, LLC (together "Barefoot Contessa"), by their attorneys Paul, Weiss, Rifkind, Wharton &

Garrison LLP, for their complaint against defendants Aqua Star (USA) Co. ("Aqua Star"),

Contessa Premium Foods, Inc. ("Contessa Premium"), O.F.I. Imports, Inc. ("OFI"), and Red

Chamber Co. ("Red Chamber") (collectively, "Defendants"), allege as follows:

**Nature of the Action**

1.      Barefoot Contessa brings this action for injunctive relief and damages to

halt a campaign of consumer confusion recently launched by its ex-licensee, which is selling —

in bad faith and without any authorization by Barefoot Contessa — frozen dinners in packaging

nearly identical to Barefoot Contessa's distinctive trade dress and frozen dinners under the

BAREFOOT CONTESSA trademark.

2.      Launched more than 35 years ago, Barefoot Contessa, and its owner and

founder Ina Garten, have realized enormous success across a range of cooking-related

publishing, broadcast and merchandising ventures, which include a celebrated series of

cookbooks, a celebrated Emmy-award winning television show on the Food Network for more

than twelve years, and popular lines of high-end food products.  The BAREFOOT CONTESSA

brand and associated trademarks and other intellectual property owned by Barefoot Contessa have amassed substantial consumer goodwill, distinction, and commercial value.

3.     In 2012, Barefoot Contessa and frozen food manufacturer and distributor Contessa Premium — unrelated entities with similar trademarks who agreed in a prior settlement agreement never to use the other's trademarks in a confusing manner — entered into a license in which Barefoot Contessa granted Contessa Premium the right to use its intellectual property, including the BAREFOOT CONTESSA mark, in connection with the manufacture, distribution and sale of frozen dinners under the BAREFOOT CONTESSA brand.  Consistent with Barefoot Contessa's emphasis on the highest quality food, ingredients and goods across its businesses, the license granted Barefoot Contessa strict control over the quality of the frozen dinners produced pursuant to the license and the use of its intellectual property in connection with the licensed products.

4.     To that end, Barefoot Contessa itself designed — using its recognizable shaded-stripe pattern that adorns nearly all of its products and a design similar to the distinctive trade dress of its other food products — the packaging for the frozen dinners:  a 22-ounce plastic pouch with, on the front, the BAREFOOT CONTESSA mark superimposed on a pattern of alternating vertical stripes in similar shades of red in the top third of the package, a banner featuring the recipe name in all lower case letters, a description and photograph of the prepared dinner that wraps around the right side of the package, and, on the back, a photo of the fresh ingredients and a personalized note from Chef Garten, signed "Ina," including a tip on how to make the meal "Even Better."

5.     The BAREFOOT CONTESSA line of frozen dinners was launched in February 2013, and was sold nationwide in major supermarket chains for over a year.

2

BAREFOOT CONTESSA frozen dinners were also marketed and promoted nationally online, on television, and in print.

6.     On April 30, 2014, Contessa Premium — facing an uncertain financial future — assigned its assets for the benefit of its creditors, and Barefoot Contessa, consistent with its rights under the license, terminated the license effective May 1, 2014.  OFI, a worldwide marketer and distributor of seafood products, purchased Contessa Premium's assets, including its trademarks, and approached Barefoot Contessa to become its new frozen food licensee — an invitation Barefoot Contessa categorically rejected given OFI's lack of experience in the frozen food business beyond seafood.  Instead, Barefoot Contessa granted OFI solely the limited right to sell off existing inventory of BAREFOOT CONTESSA frozen dinners for a limited period, subject to OFI's explicit acknowledgment in the sell-through agreement that OFI would not manufacture or market any new product, and that it would promptly destroy any items, including packaging, using Barefoot Contessa's intellectual property.

7.     With full knowledge of Barefoot Contessa's intellectual property rights and its rights under the settlement, license and sell-through agreements — and notwithstanding that OFI and Contessa Premium had no rights whatsoever to use Barefoot Contessa's intellectual property and that OFI's sell-through rights are long expired — Defendants are willfully, and in bad faith, manufacturing, distributing and selling a line of frozen dinners (the vast majority of which are the same dinners using the same recipes as the dinners previously manufactured under the terminated license) in packaging that is virtually identical to the trade dress of Barefoot Contessa's frozen dinners.  Indeed, the sole differences in the packaging are immaterial: Defendants' packaging replaces the BAREFOOT CONTESSA mark with CONTESSA CHEF INSPIRED; it replaces the photograph of Chef Garten with a photograph of another brunette

woman; it replaces the signature "Ina" with "Enjoy," written in the same font and style; and it substitutes barely noticeable differences in wording in the personalized note section.

8.     Also in violation of Barefoot Contessa's rights and the sell-through agreement, Defendants are still selling and, upon information and belief, manufacturing counterfeit BAREFOOT CONTESSA frozen dinners in the actual packaging previously used by Contessa Premium, pursuant to its now-terminated license.

9.     Upon information and belief, Defendants' frozen dinner line is intended to target directly the likely consumers of BAREFOOT CONTESSA-branded products and products bearing Barefoot Contessa's distinctive food product trade dress. Upon information and belief, Defendants' unauthorized use of Barefoot Contessa's intellectual property is intended to take unfair advantage of Barefoot Contessa's established and unparalleled reputation in the field of cooking and food-related products, in order to market its frozen dinner line more successfully to consumers. Although they have no right to do so, and were refused the right to do so by Barefoot Contessa, Defendants will thereby obtain the benefits of the reputation and consumer goodwill that Barefoot Contessa has painstakingly built over more than 35 years, and Defendants will enjoy — for free — the benefit that would be enjoyed by official licensees or endorsees, which they are not.

10.    Defendants' conduct is likely to confuse a significant and substantial number of consumers and to induce them into falsely believing that Defendants are somehow associated with Barefoot Contessa, and/or that Barefoot Contessa has sponsored, endorsed, or approved Defendants' products. Upon information and belief, Defendants' actions are deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

4

11.     In so acting, Defendants are engaging in willful infringement and dilution of Barefoot Contessa's famous trade dress and trademarks and willful breach of contract, among other violations.  Barefoot Contessa therefore brings this action seeking damages arising from, and an injunction prohibiting, Defendants' unauthorized and unlawful use of its intellectual property.

## THE PARTIES

12.     Plaintiff Barefoot Contessa Pantry, LLC is a limited liability company organized under the laws of New York with its principal place of business at 46 Newtown Lane, East Hampton, New York 11937.

13.     Plaintiff Ina Garten is an individual with an address at 46 Newtown Lane, East Hampton, New York 11937.  Ina Garten is an owner of Ina Garten, LLC and Barefoot Contessa Pantry, LLC.

14.     Plaintiff Ina Garten, LLC is a limited liability company organized under the laws of New York with an address at 46 Newtown Lane, East Hampton, New York 11937.

15.     Defendant Aqua Star (USA) Co. is a corporation organized under the laws of Washington State with its principal place of business at 1912 East Vernon Ave., Vernon, California, 90058.

16.     Upon information and belief, Defendant Contessa Premium Foods, Inc. is a corporation organized under the laws of California and doing business at 4000 Noakes St., Commerce, California 90023.

17.     Defendant O.F.I. Imports, Inc. is a corporation organized under the laws of California with its principal place of business at 1912 East Vernon Ave., Vernon, California, 90058.

5

18.     Defendant Red Chamber Co. is a corporation organized under the laws of California with its principal place of business at 1912 East Vernon Ave., Vernon, California, 90058. Red Chamber Co. is the parent company of OFI, Aqua Star, and, on information and belief, Contessa Premium.

## JURISDICTION AND VENUE

19.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.,* and the statutory and common laws of the State of New York. This Court's jurisdiction is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. The amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

20.     This Court has personal jurisdiction over Defendants pursuant to N.Y. Civ. Prac. L. & R. ("CPLR") § 302(a), because Defendants have (i) transacted business within the state (CPLR § 302(a)(l)); (ii) committed a tortious act within the state (CPLR § 302(a)(2)); and/or (iii) committed a tortious act without the state causing injury to person or property within the state, expects or should reasonably expect the act to have consequences in the state, and derives substantial revenue from interstate commerce (CPLR § 302(a)(3)(ii)).

21.     This Court also has personal jurisdiction over Defendants because they consented by contract to be subject to the jurisdiction of this Court.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this district (as that term is defined in 28 U.S.C. § 1391(c)(2)) and/or pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action have occurred and/or will occur in this district. Venue is also proper in this district because the contracts at issue specify that all disputes arising out of them shall be adjudicated in this district.

## BACKGROUND

**Chef Garten and Barefoot Contessa**

23.     Chef Garten is a celebrated author and award-winning television personality, and the creator and driving force behind the BAREFOOT CONTESSA brand of cooking-related publications, programs and consumer products.

24.     The BAREFOOT CONTESSA brand is named after a small but celebrated specialty food store in the Hamptons operated by Chef Garten beginning in 1978.   The BAREFOOT CONTESSA store quickly amassed a cult-like following of customers and since then the BAREFOOT CONTESSA brand has grown through a series of highly successful publishing, broadcasting and merchandising ventures into one of the premier brands in its field.

25.     Since 1999, Chef Garten has published nine critically acclaimed and highly popular cookbooks under the BAREFOOT CONTESSA brand.  The first printing of her latest book, *Make It Ahead: a Barefoot Contessa Cookbook,* was 1.3 million copies and debuted at number one on the New York Times bestseller list.  Her previous and similarly successful titles include *Barefoot Contessa Cookbook* (1999), *Barefoot Contessa Parties!* (2001), *Barefoot Contessa Family Style* (2002), *Barefoot in Paris* (2004), *Barefoot Contessa at Home* (2006), *Barefoot Contessa Back to Basics* (2008), *Barefoot Contessa How Easy is That?* (2010), and *Barefoot Contessa Foolproof* (2012).  Eight of the BAREFOOT CONTESSA cookbooks have been prominently ranked on the New York Times bestseller list.  Five of the books were number one on the New York Times bestseller list.  Two of them — *The Barefoot Contessa Cookbook* and *The Barefoot Contessa Parties!* — were nominated for a prestigious James Beard Award in the Entertaining & Special Occasion Cookbooks category.  There currently are more than ten million BAREFOOT CONTESSA cookbooks in print.

7

26.     The BAREFOOT CONTESSA brand also has a substantial footprint in television and electronic media entertainment.  Its centerpiece is the award-winning home entertainment cooking show *Barefoot Contessa*, which airs six days a week on the Food Network — to an audience of 300,000 to 1 million viewers per episode — and has run without interruption for twelve years.  Created and hosted by Chef Garten, and filmed in the kitchen of her East Hampton home, the show features recipes, menus, and serving ideas for entertaining. *Barefoot Contessa* has a large and devoted viewership, was nominated for Daytime Emmy awards in 2005, 2007 and 2008 and received the Daytime Emmy Award for Outstanding Lifestyle/Culinary Show Host in 2009 and 2010.  Chef Garten also received a James Beard Award for Outstanding Personality/Host in 2014.  The show is supported by a dedicated and frequently updated website, www.barefootcontessa.com, the content of which includes recipes and tips featured on each episode of the show, along with a popular Facebook blog by Chef Garten that was launched in 2012.  Like Chef Garten's cookbooks and television show, the Facebook blog has a substantial following: it gained more than 100,000 followers within a few weeks of launch, and has over 750,000  followers today.  Chef Garten also has over a quarter of a million followers on Instagram and tens of thousands of followers on Twitter and Pinterest.

27.     To maintain her goodwill and the prestige of the BAREFOOT CONTESSA brand, Chef Garten has been highly selective with respect to merchandizing ventures.  Since the inception of the BAREFOOT CONTESSA brand, she has been careful to associate it solely with a handful of product lines over which she has substantial creative input and absolute control over the design and quality, to ensure that any products bearing the brand conform to the core values and high quality standards for which the brand is famous.  The Barefoot Contessa ventures into consumer food products have included a line of high-quality

packaged mixes, marinades, sauces, and preserves that Chef Garten designed and launched under the BAREFOOT CONTESSA mark in 2006. And, as further discussed below, they also included a line of frozen dinners manufactured and marketed under license by Contessa Premium in 2013 and 2014.

28.    The BAREFOOT CONTESSA food products have been marketed nationally online, on television, and in print. Barefoot Contessa and its business partners and licensees have spent millions of dollars in advertising and promoting the BAREFOOT CONTESSA brand using the Barefoot Contessa intellectual property, including the Barefoot Contessa trade dress and the BAREFOOT CONTESSA and INA GARTEN marks.

29.    By delivering consistently high quality products and media programming, and through its signature emphasis on natural ingredients and time-saving tips, the BAREFOOT CONTESSA-branded ventures have generated immense commercial goodwill and acclaim for the brand and its creator.

**The Barefoot Contessa Intellectual Property**

30.    Ina Garten, LLC owns several valid and incontestable United States trademark registrations for BAREFOOT CONTESSA in connection with various goods and services associated with the BAREFOOT CONTESSA brand. (*See* Ex. A, Registration No. 2,892,226 (2004) (retail store services featuring gourmet foods and books); Ex. B, Registration No. 3,216,738 (2007) (online retail store services featuring cookbooks, recipes, stationery, journals, coffee mugs, canvas bag, t-shirts, peppermills, zester, and/or other food/cooking related merchandise; entertainment services in the nature of ongoing television programs in the field of food and cooking, and in the nature of providing online information services featuring Ina Garten, her television program, and her books, providing an online data base in the field of

recipes and cooking information); and Ex. C, Registration No. 4,203,987 (2012) (jams; curds; fruit preserves; mixes for bakery goods; cake mixes; cookie mixes; frosting mixes; icing mixes; pancake mixes; waffle mixes; muffin mixes; marshmallow mixes; coffee; chocolate; hot chocolate; flavoring syrups; topping syrups).)  Barefoot Contessa has used the BAREFOOT CONTESSA mark in interstate commerce continuously throughout its history as a symbol of the consistent quality and high value of its services and products.

31.     Barefoot Contessa uses distinctive design elements in connection with the BAREFOOT CONTESSA-branded ventures, which have come to represent Barefoot Contessa in the minds of consumers.  BAREFOOT CONTESSA products and promotional materials almost always feature a pattern of alternating vertical or horizontal stripes of equal width, in lighter and darker shades of the same color (the "Shaded Stripe Pattern"), which was inspired by the wallpaper in Chef Garten's kitchen.  A visual hallmark of the brand, this Shaded Stripe Pattern is featured inside and on the spine of the BAREFOOT CONTESSA cookbooks, the box for the cookbook sets, the BAREFOOT CONTESSA website, and on the packaging for the BAREFOOT CONTESSA food products.  (*See, e.g.,* Exs. D - E.)

32.     All food products marketed under the BAREFOOT CONTESSA brand carry a consistent and inherently distinctive trade dress (the "Food Product Trade Dress"), developed solely by Barefoot Contessa, which incorporates the signature design elements shared by other BAREFOOT CONTESSA-branded content and products.

33.     First, in the top third of the packaging for each product, the Food Product Trade Dress incorporates the distinctive Shaded Stripe Pattern.  Second, the Food Product Trade Dress incorporates the mark BAREFOOT CONTESSA printed in white all lower-case letters on top of the Shaded Stripe Pattern.  Third, the Food Product Trade Dress includes a horizontal

banner beneath the striped pattern with the recipe name centered in all lower case letters. Fourth, the Food Product Trade Dress includes a photograph of the prepared product on the lower portion of the packaging that wraps around its right side. Fifth, the back of the package includes quotes and tips from Chef Garten. (Exs. D - E.)

34.     As a result of its inherent and acquired distinctiveness, the Food Product Trade Dress has come to represent the BAREFOOT CONTESSA brand in the minds of consumers.

**The License with Contessa Premium**

35.     Contessa Premium is a manufacturer and distributor of seafood and frozen food products, which owns the registered trademark CONTESSA. Images of examples of packaging for CONTESSA-branded frozen food products are attached as Exhibit F.

36.     In December 2011, Barefoot Contessa and Contessa Premium, recognizing the potential for consumer confusion from the parties' use of the similar trademarks, entered into a settlement and coexistence agreement regarding the use of their respective trademarks (the "Settlement Agreement"). The Settlement Agreement specifically concerned the parties' use of the CONTESSA mark to which Contessa Premium asserted an interest, and the BAREFOOT CONTESSA mark owned by Barefoot Contessa. Pursuant to that Settlement Agreement, the parties specifically agreed to "make all efforts to avoid confusion between their two brands," and Contessa Premium was expressly prohibited from "us[ing]… any word or design element in combination with CONTESSA that would be likely to create consumer confusion between Contessa Premium and Garten." Barefoot Contessa agreed not to object to or interfere with Contessa Premium's use of the CONTESSA mark in combination with other elements (exclusive of BAREFOOT or its equivalents) in connection with frozen meals, frozen entrees, or frozen seafood, so long as such use was *consistent with the Settlement Agreement.* Barefoot Contessa

11

also agreed not to seek to register or use the BAREFOOT CONTESSA mark in connection with frozen meals, frozen entrees and frozen seafood anywhere in the world. The Settlement Agreement is binding on the parties' successors, assigns, and affiliated companies.

37.     Following the settlement, Barefoot Contessa and Contessa Premium began discussing a potential licensing venture. Thereafter, on September 12, 2012, the parties entered into a License Agreement (the "License"), pursuant to which Barefoot Contessa granted Contessa Premium a license to use certain of its trademarks, including BAREFOOT CONTESSA and INA GARTEN, Chef Garten's likeness and biographical information, and other intellectual property in connection with a line of frozen dinners to be manufactured and marketed by Contessa Premium.

38.     The design for the packaging for the BAREFOOT CONTESSA frozen dinners (the "Frozen Dinner Trade Dress") was developed and created by Barefoot Contessa.

39.     Like all other BAREFOOT CONTESSA-branded product packaging, the Frozen Dinner Trade Dress incorporated each element of the Food Product Trade Dress: (1) the Shaded Stripe Pattern on the top third of the package; (2) "barefoot contessa" printed in white on top of the Shaded Stripe Pattern; (3) a horizontal banner beneath the Shaded Stripe Pattern with the recipe name in all lower case letters; (4) a photograph of the prepared dinner on the lower portion of the packaging that wraps around its right side; (5) on the back of the package, quotes and tips from Chef Garten; as well as some additional design elements specific to the Frozen Dinner Trade Dress. (*See* Ex. E)

40.     Specifically, the front panel of the Frozen Dinner Trade Dress features: (1) the Shaded Stripe Pattern in lighter and darker shades of red in the top third of the packaging; (2) on top of the Shaded Stripe Pattern, "barefoot contessa" printed in white and a photograph of

Chef Garten, along with a dash and the word "Ina" in white cursive font intended to look like handwriting; (3) a colored horizontal banner beneath the Shaded Stripe Pattern with the recipe name (*e.g.,* "beef stew bourguignon") in white text and all lower case letters; and (4) a photograph of the prepared dinner on the lower portion of the front panel, with a three-line description of the product in black text in the upper left corner of the photograph. (*See Id.*)

41.    The right side panel of the Frozen Dinner Trade Dress carries over the Shaded Stripe Pattern, the colored horizontal banner with the recipe name in the same type and style as the front panel, and the photograph that are featured on the front. (*See Id.*)

42.    The left side panel of the Frozen Dinner Trade Dress features the nutritional panel surrounded by the same Shaded Stripe Pattern. (*See Id.*)

43.    The back panel of the Frozen Dinner Trade Dress features a white box surrounded by the red Shaded Stripe Pattern. The top and bottom of the white box is divided by a red line. The bottom portion of the box contains cooking instructions and a photograph of the product being prepared in a sauté pan. The top left hand corner of the white box features a colored banner with the recipe name in white text that is all lower case. The BAREFOOT CONTESSA brand name appears in the top right corner of the white box in red lettering and all lower case letters. (*See Id.*)

44.    Beneath the banner containing the recipe name, the back panel of the Frozen Dinner Trade Dress features a quote from Chef Garten in black and a tip to make the product "Even Better," with "Even Better" in red text followed by the tip in black text. Beneath the tip there is a dash followed by "Ina" in red cursive font intended to look like handwriting. To the right of this text is a photograph of some of the ingredients found in the product and the

phrase "Nothing tastes better than a freshly cooked dinner made with great ingredients." in italic red text. (*See Id.*)

45.      Consistent with Barefoot Contessa's general emphasis on high quality food, ingredients and goods across each of its business lines, the License granted Barefoot Contessa strict control over the quality of goods produced pursuant to the License and the use of the licensed Barefoot Contessa intellectual property.  For example, the License required approval from Barefoot Contessa for any significant changes to the quality of the frozen dinners, including changes to ingredient sourcing.

46.      Using the proprietary recipes and quality standards supplied by Barefoot Contessa and following the approval of the products by Barefoot Contessa, beginning in 2013, Contessa Premium manufactured and marketed nine separate products in connection with the frozen food line: "beef stew bourguignon," "sesame chicken & noodles," "shrimp scampi & linguine," "creamy chicken stew," "garlic & ginger chicken," "jambalaya," "pasta carbonara with pancetta," "penne pasta with five cheeses" and "tequila lime chicken."

47.      The line was marketed using the Frozen Dinner Trade Dress and other Barefoot Contessa intellectual property supplied by Barefoot Contessa, which Contessa Premium incorporated into a dedicated website, http://www.barefoot.contessa.com, that it maintained to promote the products to consumers.

48.      The line was advertised and promoted online, on television, and in print and sold in supermarket chains and retailers including Stop & Shop, Safeway, Publix and Walmart nationwide.  The licensed BAREFOOT CONTESSA frozen dinners reached close to $20 million in retail sales in less than two years and held strong market share in several key retailers.

**OFI's Acquisition of Contessa Premium and Execution of the Sell-Through Agreement**

49. On or around April 30, 2014, in the face of mounting financial difficulties, Contessa Premium executed a general assignment of its assets for the benefit of its creditors. In light of the assignment, and pursuant to its rights under Section 7(a)(iii) of the License, Barefoot Contessa terminated the License on May 1, 2014.

50. Immediately upon termination, Contessa Premium was obligated under the License to stop manufacturing all products under the License and to cease all use of the licensed Barefoot Contessa intellectual property, but was permitted to sell "Sell-Through Items," certain then-existing inventory, for a limited period.

51. Shortly after the termination of the License, upon information and belief, OFI, through its affiliate Aqua Star, purchased substantially all of the Contessa Premium assets, including the CONTESSA brand name and trademark. In connection with the acquisition, OFI approached Barefoot Contessa with a request for a new license to continue production of the BAREFOOT CONTESSA line of frozen dinners. Barefoot Contessa refused OFI's request because OFI has no experience manufacturing food items beyond seafood, and therefore Barefoot Contessa was not comfortable that OFI could manufacture the product consistent with Barefoot Contessa's stringent quality standards.

52. Instead, OFI and Barefoot Contessa entered into a limited agreement (the "Sell-Through Agreement"), pursuant to which OFI was permitted to sell the Sell-Through Items for a limited period that is now long expired, but was explicitly prohibited from manufacturing or selling any new product and was required to destroy any remaining Sell-Through Items upon the expiration of its rights. Other than in connection with its limited rights to sell the Sell-Through Items, OFI had no right to use any of the Barefoot Contessa intellectual property.

53.     Although OFI requested that it be allowed to manufacture additional product to fill empty BAREFOOT CONTESSA frozen food dinner packages that it acquired from Contessa Premium, Barefoot Contessa refused OFI's request. Instead, the Sell-Through Agreement required that OFI promptly destroy any items, including packaging, that use the Barefoot Contessa intellectual property, subject to OFI's right to sell the Sell-Through Items.

**Defendants' Unlawful Activities**

54.     Although Defendants have no license or right to use any of Barefoot Contessa's intellectual property and OFI's sell-through rights have expired, Defendants are currently attempting to pass off their products as licensed BAREFOOT CONTESSA products, in violation of their agreements with Barefoot Contessa and Barefoot Contessa's intellectual property rights, in at least two ways: (1) Defendants are manufacturing, distributing, and selling a new line of frozen dinners branded as CONTESSA CHEF INSPIRED using trade dress that is a direct and brazen copy of the Frozen Dinner Trade Dress and the Food Product Trade Dress; and (2) Defendants are selling and, upon information and belief, manufacturing and distributing, BAREFOOT CONTESSA frozen dinners in the exact same package in which the licensed BAREFOOT CONTESSA frozen dinners were sold (the "Licensed Package"), which prominently displays the BAREFOOT CONTESSA trademark and other Barefoot Contessa intellectual property (together, the "Infringing Products").

Defendants' "Contessa Chef-Inspired" Frozen Dinners

55.     Defendants currently are marketing a new line of frozen dinners under the mark CONTESSA CHEF INSPIRED. (*See* Ex. G.) CONTESSA CHEF INSPIRED frozen dinners are currently being offered for sale in certain markets, including in Stop & Shop in Hampton Bays, New York. Upon information and belief, Defendants have already begun to

distribute and sell their CONTESSA CHEF INSPIRED products to consumers nationally, including in this judicial district.

56.     The entire package for the CONTESSA CHEF INSPIRED frozen dinners (the "Contessa Chef Inspired Package") is directly copied from the Frozen Dinner Trade Dress and the Food Product Trade Dress with only minor, immaterial alterations. (*Compare* Ex. E to Ex. G.)

57.     The front of the Contessa Chef Inspired Package is virtually identical to the Frozen Dinner Trade Dress and the Food Product Trade Dress.  It features: (1) the exact same Shaded Stripe Pattern in lighter and darker shades of red in the top third of the packaging; (2) the brand name, including the CONTESSA mark, printed in white on top of the Shaded Stripe Pattern; (3) the exact same horizontal banner beneath the Shaded Stripe Pattern with the exact same recipe name in all lower case letters, in exactly the same font, color and size; (4) the exact same recipe name (*e.g.,* "beef stew bourguignon"); and (5) the exact same photograph of the prepared dinner on the lower portion of the packaging, with the exact same description of the product, in the exact same place, font, color and size.  Defendants merely substituted a photograph of another brunette woman in place of Chef Garten's photograph at the top of the package and replaced the BAREFOOT CONTESSA brand name with CONTESSA CHEF INSPIRED, using the same white cursive font for "Chef Inspired" as that used for the word "Ina" on the Frozen Dinner Trade Dress. (*See* Ex. H.)

58.     The side panels of the packages are likewise virtually indistinguishable. Like the Frozen Dinner Trade Dress and the Food Product Trade Dress, the right side of the Contessa Chef Inspired Package carries over the Shaded Stripe Pattern, the horizontal colored banner with the recipe name in the same type and style as the front panel, and the photograph

17

that are featured on the front (Ex. I), and the left side features the nutritional panel surrounded by the same Shaded Stripe Pattern (Ex. J).

59.     The back panel of the Contessa Chef Inspired Package is also essentially identical to the Frozen Dinner Trade Dress.  Like the Frozen Dinner Trade Dress, the back panel of the Contessa Chef Inspired Package features: (1) a white box surrounded by the same Shaded Stripe Pattern divided in half by a red line; (2) in the bottom portion of the white box, cooking instructions and a photograph of the dinner being prepared in a sauté pan identical to the photographs used in the Frozen Dinner Trade Dress; (3) a colored banner with the recipe name in white text in the top left hand corner of the white box, using the same font and lower case text; and (4) the brand name in the top right corner of the white box in red lettering.  (Ex. K.)

60.     The back of the infringing Contessa Chef Inspired Package also includes language identical or substantially similar to the quotes and tips used on the Frozen Dinner Trade Dress, using the same fonts and colors.  For example, the back panel of the BAREFOOT CONTESSA "penne pasta with five cheeses" frozen dinner includes the following language: "This grown-up Mac & Cheese is easy enough to make for your family but delicious enough to serve to company" and "Even Better: Sprinkle with chopped fresh basil."  The Contessa Chef Inspired Package for "penne pasta with five cheeses" contains identical language in identical fonts and colors.  Instead of being "signed" with a dash with Chef Garten's name, the Contessa Chef Inspired Package features a dash followed by the word "Enjoy" using the same font as Chef Garten's name, also in red.  The phrase "Nothing tastes better than a freshly cooked dinner made with great ingredients." on the back panel of the Contessa Chef Inspired Package is also copied directly from the Frozen Dinner Trade Dress.  (Ex. K.)

61.     All of the photographs of food or ingredients used on the Contessa Chef Inspired Package are identical to the photographs used in the Frozen Dinner Trade Dress.

62.     Further, upon information and belief, Defendants are manufacturing their CONTESSA CHEF INSPIRED line of frozen dinners using Chef Garten's proprietary recipes that were provided to Contessa Premium in connection with the terminated license. Defendants' unauthorized use of Chef Garten's recipes is not subject to the strict quality control standards and approval requirements, including with respect to ingredient sourcing, prescribed in the License.

63.     Defendants' use of the Frozen Dinner Trade Dress, the Food Product Trade Dress and other Barefoot Contessa intellectual property, without Barefoot Contessa's authorization or oversight, is causing irreparable harm to the extensive goodwill that has been established in the BAREFOOT CONTESSA name, trademark, and other intellectual property, and to Barefoot Contessa's reputation for high quality products.

64.     Rather than destroying any items in its possession using the Barefoot Contessa intellectual property as required under the Sell-Through Agreement, including Barefoot Contessa's Frozen Dinner Trade Dress, copyrighted photographs, and recipes, Defendants unlawfully used these items to misappropriate Barefoot Contessa's goodwill when the license they requested was denied. Defendants' use of the Barefoot Contessa intellectual property is clearly calculated to confuse consumers into believing that Barefoot Contessa has manufactured, authorized, endorsed, or sponsored the CONTESSA CHEF INSPIRED frozen dinners or that the CONTESSA CHEF INSPIRED frozen dinners are affiliated or associated with Barefoot Contessa, all in violation of Barefoot Contessa's intellectual property rights. Indeed, the CONTESSA CHEF INSPIRED frozen dinners have caused actual confusion in the marketplace.

19

65.     Defendants' use of the very same dinners previously manufactured under the license with Barefoot Contessa, using, upon information and belief, Barefoot Contessa's proprietary recipes, in conjunction with the Frozen Dinner Trade Dress suggests to consumers that the license was never terminated and that Barefoot Contessa just made small tweaks to the Licensed Package when nothing could be further from the truth.

66.     Notwithstanding that Defendants' sole right to use the CONTESSA trademark is subject to the Settlement Agreement between Contessa Premium and Barefoot Contessa, which prohibits any use of the CONTESSA mark in combination with any word or design element that would be likely to create consumer confusion between Contessa Premium and Chef Garten, upon information and belief, Defendants — in flagrant violation of the Settlement Agreement — chose the very name of the product, "Contessa Chef Inspired," intentionally to create confusion and form an association in the consumer's mind between Defendants' products and Chef Garten, the famous chef associated with Barefoot Contessa. Simply put, Defendants helped themselves to the license that Barefoot Contessa emphatically refused to grant them.

Defendants' Sale of BAREFOOT CONTESSA Products

67.     In addition, Defendants are continuing to sell, and, upon information and belief, to manufacture and distribute, counterfeit BAREFOOT CONTESSA frozen dinners in the Licensed Package, which prominently displays the BAREFOOT CONTESSA trademark and other Barefoot Contessa intellectual property, despite the termination of the License and the expiration of OFI's rights under the Sell-Through Agreement.

68.     Despite the expiration of OFI's only rights to sell off existing inventory, Defendants continue to offer products in the Licensed Package, purporting to be licensed BAREFOOT CONTESSA frozen dinners, for sale to consumers in Florida and, upon

information and belief, nationally, in violation of the Sell-Through Agreement. Further, some of these products bear sell-by dates in March and April 2016. (*See* Ex. L.) Because BAREFOOT CONTESSA frozen dinners have a shelf-life of no more than eighteen months and the last permissible date to manufacture BAREFOOT CONTESSA frozen dinners under the License was before May 1, 2014, the March and April sell-by dates make it clear that not only are Defendants selling products in the Licensed Package after their right to do so has expired, but they also have been manufacturing counterfeit BAREFOOT CONTESSA frozen dinners in the Licensed Package despite the clear prohibition on manufacturing in the Sell-Through Agreement.

69.     Moreover, the Licensed Package for BAREFOOT CONTESSA products containing meat or poultry included a seal from the U.S. Department of Agriculture ("U.S.D.A.") with the plant number at which the product was produced.   At least some of the products currently being sold in the Licensed Package have a sticker placed over the original U.S.D.A. seal and the package bears a new plant number for a plant that is operated by a subsidiary of Red Chamber, further indicating that Defendants have been manufacturing new inventory and selling counterfeit BAREFOOT CONTESSA frozen dinners using the Licensed Package in direct violation of the Sell-Through Agreement and Barefoot Contessa's intellectual property rights. (*See* Ex. L.)

70.     Defendants also continued to advertise the sale of frozen dinners in the Licensed Package using the Barefoot Contessa intellectual property and Frozen Dinner Trade Dress online at http://www.barefoot.contessa.com.

71.     Defendants' continued advertising, manufacturing, distribution, and sale of frozen dinners in the Licensed Package is a flagrant violation of the Sell-Through Agreement,

the License Agreement, the Settlement Agreement and Barefoot Contessa's intellectual property rights.

**Barefoot Contessa's Notice to Defendants of Their Infringement and Breach of Contract**

72.     Barefoot Contessa first learned of Defendants' unlawful activity on February 4, 2015.  By letter dated February 9, 2015, Barefoot Contessa asked Defendants immediately to cease and desist from any further sale, distribution, importation or exportation, manufacturing, marketing and/or advertising of any BAREFOOT CONTESSA products or any other products that infringe the Barefoot Contessa intellectual property, including, without limitation, any remaining Sell-Through Items, items sold using the Frozen Dinner Trade Dress, and items sold using the BAREFOOT CONTESSA brand name, and to comply with Barefoot Contessa's demands to remedy the infringement.

73.     Other than taking down the website at http://www.barefoot.contessa.com, to date, Defendants have refused to comply with the rest of Barefoot Contessa's demands, and Defendants' infringing conduct has not ceased.

74.     Defendants are well aware of the goodwill represented and symbolized by the Barefoot Contessa intellectual property and Barefoot Contessa's rights to that intellectual property, and know that likely consumers of Defendants' Infringing Products have long recognized and relied upon the Barefoot Contessa intellectual property to identify products and services associated with or sponsored by Barefoot Contessa.  Indeed, Defendants have recognized the value of the Barefoot Contessa intellectual property by engaging Barefoot Contessa, unsuccessfully, in discussions to obtain a new license to use the Barefoot Contessa intellectual property in connection with Defendants' frozen dinners.

75.     Defendants' brazen copying of the Frozen Dinner Trade Dress and use of the Barefoot Contessa intellectual property on its packaging and in associated marketing or

advertising, as well as its manufacturing and sale of frozen dinners in the Licensed Package, is a clear and deliberate attempt to trade upon Barefoot Contessa's valuable reputation and goodwill, absent any authorization from Barefoot Contessa. Indeed, as Barefoot Contessa's ex-licensee, a likelihood of confusion of Defendants' products with the BAREFOOT CONTESSA brand, due to Defendants' wholesale copying, in bad faith, of the Frozen Dinner Trade Dress, can be presumed.

76.     A significant proportion of the consuming public is likely to be confused by Defendants' use of the Barefoot Contessa intellectual property in the manner described above and is likely to believe that the Infringing Products derive from Barefoot Contessa or are associated or affiliated with, and/or endorsed or sponsored by, Barefoot Contessa.

**Barefoot Contessa's Injury**

77.     As a direct and proximate result of Defendants' unauthorized conduct, Barefoot Contessa has been substantially damaged in, among other ways, creation of confusion among consumers as to Barefoot Contessa's association or connection with or endorsement or authorization of Defendants and the Infringing Products, and the dilution of the Barefoot Contessa intellectual property, including the Food Product Trade Dress, the Frozen Dinner Trade Dress, the famous BAREFOOT CONTESSA and INA GARTEN trademarks, the copyrights in the photographs used in connection with the Frozen Dinner Trade Dress, and Chef Garten's name and likeness and the BAREFOOT CONTESSA name, which has come to identify Chef Garten. Further, Defendants' conduct is in direct violation of its obligations under the Settlement Agreement, License Agreement, and Sell-Through Agreement.

78.     As a result of Defendants' misappropriation of the Barefoot Contessa intellectual property, Defendants have caused, and will continue to cause, irreparable injury to

Barefoot Contessa and have substantially damaged the value of the Barefoot Contessa intellectual property.

79.    In addition, Defendants have enriched themselves at Barefoot Contessa's expense by advertising and selling a product that appropriates and exploits Barefoot Contessa's intellectual property as well as Barefoot Contessa's goodwill and reputation. Among the benefits Defendants have gained from this conduct are increased revenues from the sale of their Infringing Products using the Barefoot Contessa intellectual property, through consumer confusion as to the source of the products or their association or connection with or endorsement of or authorization by Barefoot Contessa, and increased goodwill.

**FIRST CLAIM**
**(Trade Dress Infringement Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

80.    Barefoot Contessa repeats and realleges paragraphs 1 through 79 above.

81.    Barefoot Contessa owns the Frozen Dinner Trade Dress and the Food Product Trade Dress, which are non-functional, inherently distinctive, and also have acquired substantial secondary meaning in the marketplace by virtue of their use by Barefoot Contessa and its licensees in connection with the promotion and sale of goods and services, and have developed valuable goodwill associated therewith.

82.    Upon information and belief, Defendants have used, are using, and/or imminently intend to use a trade dress in interstate commerce, that is identical and/or confusingly similar to the Frozen Dinner Trade Dress and the Food Product Trade Dress without the consent of Barefoot Contessa, on Defendants' products or in connection with the advertising and promotion of such goods.

83.    Defendants' conduct as alleged above constitutes the unauthorized use in commerce of the Frozen Dinner Trade Dress and the Food Product Trade Dress in connection

24

with the Infringing Products and has caused and/or is likely to cause confusion, mistake, or deception of the public as to (i) the affiliation, connection, and/or association of Barefoot Contessa with Defendants and the Infringing Products; (ii) the origin of the Infringing Products; and/or (iii) the sponsorship, endorsement, or approval of the Infringing Products by Barefoot Contessa, in each case in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.     Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

85.     Defendants' conduct as alleged above has caused and/or will cause Barefoot Contessa to suffer injury, for which it has no adequate remedy at law.

86.     Pursuant to 15 U.S.C. § 1117, Barefoot Contessa is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, and to the costs of this action and to attorneys' fees.

### SECOND CLAIM
**(Trademark Infringement Under the Section 32 of the Lanham Act, 15 U.S.C. § 1114(1))**

87.     Barefoot Contessa repeats and realleges paragraphs 1 through 86 above.

88.     Barefoot Contessa owns the BAREFOOT CONTESSA registered trademark.

89.     The BAREFOOT CONTESSA registered mark is valid and subsisting.

90.     Upon information and belief, Defendants have used, are using, and/or imminently intend to use the BAREFOOT CONTESSA registered mark in interstate commerce, without the consent of Barefoot Contessa, in connection with the sale of goods and/or in connection with the advertising and promotion of such goods.

91.     Defendants' conduct as alleged above constitutes the unauthorized use in commerce in the United States of the BAREFOOT CONTESSA registered mark in connection

with the sale, offering for sale, distribution, or advertising of its products, and has caused and/or is likely to cause confusion or mistake or deception of the public as to (i) the affiliation, connection, and/or association with Barefoot Contessa of the Infringing Products; (ii) the origin of the Infringing Products; and/or (iii) the sponsorship, endorsement, or approval of the Infringing Products by Barefoot Contessa, in each case a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

92.     Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

93.     Defendants' conduct as alleged above has caused and/or will imminently cause Barefoot Contessa to suffer irreparable harm, for which it has no adequate remedy at law.

94.     Pursuant to 15 U.S.C. § 1117, Barefoot Contessa is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, and to the costs of this action and to attorneys' fees.

### THIRD CLAIM
### (Unfair Competition and False Designation of Origin
### Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

95.     Barefoot Contessa repeats and realleges paragraphs 1 through 94 above.

96.     In addition to the registered BAREFOOT CONTESSA mark, Barefoot Contessa owns valuable common law trademark rights in the BAREFOOT CONTESSA trademark, which, by virtue of its use by Barefoot Contessa, in connection with the promotion and sale of goods and services, has gained widespread consumer recognition, and has developed valuable goodwill associated therewith.

97.     Upon information and belief, Defendants have used, are using, and/or imminently intend to use the BAREFOOT CONTESSA mark in interstate commerce, without

26

the consent of Barefoot Contessa, to identify Defendants' goods and/or in connection with the advertising and promotion of such goods.

98. Defendants' conduct as alleged above constitutes the unauthorized use in commerce of the BAREFOOT CONTESSA mark in connection with the Infringing Products and has caused and/or is likely to cause confusion, mistake, or deception of the public as to (i) the affiliation, connection, and/or association of Barefoot Contessa with Defendants and the Infringing Products; (ii) the origin of the Infringing Products; and/or (iii) the sponsorship, endorsement, or approval of the Infringing Products by Barefoot Contessa, in each case in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99. Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

100. Defendants' conduct as alleged above has caused and/or will cause Barefoot Contessa to suffer injury, for which it has no adequate remedy at law.

101. Pursuant to 15 U.S.C. § 1117, Barefoot Contessa is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, and to the costs of this action and to attorneys' fees.

## FOURTH CLAIM
### (Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

102. Barefoot Contessa repeats and realleges paragraphs 1 through 101 above.

103. The Frozen Dinner Trade Dress, the Food Product Trade Dress and the BAREFOOT CONTESSA trademark, are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and Barefoot Contessa has built up valuable goodwill in the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark.  The Frozen Dinner Trade Dress, the Food Product Trade Dress, and the

BAREFOOT CONTESSA trademark have enjoyed such distinction and fame since long before Defendants commenced unauthorized use of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark.

104.    Upon information and belief, Defendants have used, are using, and/or intend to use the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark in interstate commerce in connection with the advertising and promotion of goods and services sold or offered by Defendants.

105.    Defendants' use of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark has caused actual harm and is likely to cause harm to Barefoot Contessa by diluting and weakening the unique and distinctive significance and quality of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark to identify Barefoot Contessa's goods and services and by tarnishing the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA name and trademark in the minds of consumers.

106.    By reason of the foregoing, Defendants have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

107.    Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

108.    Defendants' conduct as alleged above has caused and/or will cause Barefoot Contessa to suffer injury, for which it has no adequate remedy at law.

109.    Pursuant to 15 U.S.C. § 1117, Barefoot Contessa is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to attorneys' fees.

## FIFTH CLAIM
### (Common Law Trademark Infringement)

110.    Barefoot Contessa repeats and realleges paragraphs 1 through 109 above.

111.    Defendants' conduct as alleged above constitutes infringement and misappropriation of the BAREFOOT CONTESSA trademark in violation of Barefoot Contessa's rights under common law and in equity.

112.    Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

113.    Defendants' conduct as alleged above has caused and/or will cause Barefoot Contessa to suffer injury, for which it has no adequate remedy at law.

114.    Barefoot Contessa is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to attorneys' fees.

## SIXTH CLAIM
### (Common Law Unfair Competition)

115.    Barefoot Contessa repeats and realleges paragraphs 1 through 114 above.

116.    Upon information and belief, by using the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark in commerce without authorization by Barefoot Contessa, Defendants knowingly and willfully are confusing consumers by creating the false and misleading impression that Defendants and their Infringing Products are related to, affiliated with, or connected with Barefoot Contessa.

117.    Upon information and belief, Defendants' deliberate use of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark in connection with the marketing, advertising, promotion, and/or distribution of its Infringing Products was done in bad faith with the intent to unfairly benefit from the expense,

time, effort, and labor expended by Barefoot Contessa in developing and promoting its BAREFOOT CONTESSA mark and products.

118.    By reason of the foregoing, Defendants' conduct constitutes willful and deliberate false designation of origin, false description and representation, and unfair competition, in violation of Barefoot Contessa's rights under common law and in equity.

119.    Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

120.    Defendants' conduct as alleged above has caused and/or will cause Barefoot Contessa to suffer injury, for which it has no adequate remedy at law.

121.    Furthermore, Barefoot Contessa is entitled to injunctive relief, actual damages in an amount to be determined at trial and to Defendants' profits attributable to their unlawful conduct.

**SEVENTH CLAIM**
**(Trademark and Trade Dress Dilution Under Section 360-l**
**of the New York General Business Law)**

122.    Barefoot Contessa repeats and realleges the allegations of paragraphs 1 through 121 above.

123.    The Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark are famous and distinctive, and Barefoot Contessa has built up valuable goodwill in the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark.  The Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark have enjoyed such distinction and fame since long before Defendants commenced use of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark.

124.    Upon information and belief, Defendants have used, are using, and/or intend to use the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark in commerce in connection with the advertising and promotion of goods and services sold or offered by Defendants.

125.    Defendants' use of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark, has caused actual harm and is likely to cause harm to Barefoot Contessa by diluting and weakening the unique and distinctive significance and quality of the Frozen Dinner Trade Dress, the Food Product Trade Dress, and the BAREFOOT CONTESSA trademark to identify Barefoot Contessa's goods and services and by tarnishing Barefoot Contessa's name and trademark in the minds of consumers.

126.    By reason of the foregoing, Defendants have violated Section 360-l of the General Business Law of the State of New York.

127.    Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

128.    Defendants' conduct as alleged above has caused and/or will cause Barefoot Contessa to suffer injury, for which it has no adequate remedy at law.

129.    Barefoot Contessa is entitled to injunctive relief.

### EIGHTH CLAIM
**(Breach of the Settlement Agreement against All Defendants)**

130.    Barefoot Contessa repeats and realleges the allegations of paragraphs 1 through 129 above.

131.    In December 2011, Barefoot Contessa and Contessa Premium entered into the Settlement Agreement, pursuant to which the parties agreed not to use the other's trademarks in a confusing manner.

132.    Barefoot Contessa has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the Settlement Agreement.

133.    Pursuant to Sections 3(e) and 8 of the Settlement Agreement, Contessa Premium is prohibited from using the CONTESSA mark in combination with any word or design element that would be likely to create consumer confusion between Contessa Premium and Chef Garten.  As a successor, assign, and/or affiliate of Contessa Premium, OFI, Red Chamber, and Aqua Star are likewise bound by those restrictions pursuant to Section 11(d).

134.    Defendants breached their respective obligations under the Settlement Agreement by using the CONTESSA mark in connection with the Frozen Dinner Trade Dress and the Food Product Trade Dress and by using the CONTESSA mark in connection with the product name "Contessa Chef Inspired," which has created or is likely to create consumer confusion between Contessa Premium and Barefoot Contessa.

135.    Barefoot Contessa has suffered, and continues to suffer, significant damages as a result of Defendants' breach of contract.

136.    Upon information and belief, Defendants' actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

137.     Barefoot Contessa gave Defendants notice of their infringing conduct on February 9, 2015.

## NINTH CLAIM
### (Breach of the License against Contessa Premium)

138.    Barefoot Contessa repeats and realleges the allegations of paragraphs 1 through 137 above.

139.   In June 2012, Barefoot Contessa and Contessa Premium entered into the License Agreement pursuant to which Barefoot Contessa granted Contessa Premium the right to use certain of its intellectual property, including the BAREFOOT CONTESSA mark in connection with the manufacture, distribution, and sale of frozen dinners under the BAREFOOT CONTESSA brand.

140.   Barefoot Contessa has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the License Agreement.

141.   Pursuant to the License, upon termination of the agreement, Contessa Premium was obligated to stop manufacturing all products under the License, to cease all use of any Barefoot Contessa intellectual property, and to promptly destroy and cause its customers to destroy any Sell-Through Items after their right to sell those items expired.

142.   Contessa Premium breached its obligations under the License by:

(a)   upon information and belief, continuing to manufacture BAREFOOT CONTESSA frozen dinners following the termination of the License;

(b)   continuing to use Barefoot Contessa intellectual property following the termination of the License, including their use of the Frozen Dinner Trade Dress and the Food Product Trade Dress in connection with the Infringing Products and the Contessa Premium website; and

(c)   continuing to sell and/or failing to recall and destroy all Sell-Through Items after expiration of their limited rights.

143.   Barefoot Contessa has suffered, and continues to suffer, significant damages as a result of Contessa Premium's breach of contract.

144.    Upon information and belief, Contessa Premium's actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

145.    Barefoot Contessa gave Contessa Premium notice of its infringing conduct on February 9, 2015.

## TENTH CLAIM
### (Breach of the Sell-Through Agreement against OFI)

146.    Barefoot Contessa repeats and realleges the allegations of paragraphs 1 through 145 above.

147.    In May 2014, Barefoot Contessa and OFI entered into the Sell-Through Agreement, pursuant to which Barefoot Contessa granted OFI the limited right to sell then-existing inventory for a limited time after the License was terminated.

148.    Barefoot Contessa has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the Sell-Through Agreement.

149.    Pursuant to the Sell-Through Agreement, OFI was obligated to stop manufacturing all products under the License, to cease all use of any Barefoot Contessa intellectual property, to promptly destroy and cause its customers to destroy any Sell-Through Items after their right to sell those items expired, and to promptly destroy any items, including packaging, that use Barefoot Contessa intellectual property.

150.    OFI breached its respective obligations under the Sell-Through Agreement by:

(a)    upon information and belief, continuing to manufacture BAREFOOT CONTESSA frozen dinners following the termination of the License;

34

(b)      upon information and belief, failing to destroy items, including packaging, that use Barefoot Contessa intellectual property;

(c)      continuing to use Barefoot Contessa intellectual property following the termination of the License, including their use of the Frozen Dinner Trade Dress and the Food Product Trade Dress in connection with the Infringing Products and the Contessa Premium website; and

(d)      continuing to sell and/or failing to recall and destroy all Sell-Through Items after expiration of their limited rights.

151.    Barefoot Contessa has suffered, and continues to suffer, significant damages as a result of OFI's breach of contract.

152.    Upon information and belief, OFI's actions were deliberate, willful, and in conscious disregard of Barefoot Contessa's rights.

153.    Barefoot Contessa gave OFI notice of its infringing conduct on February 9, 2015.

## ELEVENTH CLAIM
### (Right of Publicity Under New York Civil Rights Law § 51)

154.    Barefoot Contessa repeats and realleges the allegations of paragraph 1 through 154 above.

155.    Upon information and belief, Defendants have used, are using, and/or intend to use Chef Garten's name, picture, and likeness, as well as the Barefoot Contessa name, which has come to refer to Chef Garten, within New York state for advertising purposes and/or for the purposes of trade, without Chef Garten's written consent.

156.    By reason of the foregoing, Defendants have violated Section 51 of the New York Civil Rights Law.

157.    Defendants' conduct as alleged above has caused and/or will cause Chef Garten to suffer injury, for which she has no adequate remedy at law.

158.    Chef Garten is entitled to actual and exemplary damages in an amount to be determined at trial.

## TWELFTH CLAIM
### (Unjust Enrichment)

159.    Barefoot Contessa repeats and realleges the allegations of paragraph 1 through 159 above.

160.    By the acts alleged above, Defendants have been unjustly enriched by their unlawful conduct at the expense of Barefoot Contessa. Defendants' acts have unjustly enriched and wrongfully benefited Defendants, in an amount to be determined at trial and to which Barefoot Contessa is rightfully entitled.

## PRAYER FOR RELIEF

WHEREFORE, Barefoot Contessa demands judgment against Defendants as follows:

1.    Preliminarily and permanently enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or having actual notice of this Order, from:

(a)    imitating, copying, or making unauthorized use of the Barefoot Contessa intellectual property, including, without limitation, the Food Product Trade Dress, the Frozen Dinner Trade Dress, the famous BAREFOOT CONTESSA and INA GARTEN trademarks, the copyrights in the photographs used in connection with the Frozen Dinner Trade Dress, and Chef Garten's name and likeness and the Barefoot Contessa name, which has come to identify Chef Garten, or any variation thereof;

(b)     manufacturing, producing, distributing, advertising, promoting, selling, or offering for sale the Infringing Products and any food product bearing the Barefoot Contessa intellectual property including, without limitation, the famous BAREFOOT CONTESSA and INA GARTEN trademarks, the Food Product Trade Dress, the Frozen Dinner Trade Dress, the copyrights in the photographs used in connection with the Frozen Dinner Trade Dress, and Chef Garten's name and likeness and the Barefoot Contessa name, which has come to identify Chef Garten, or any design confusingly similar thereto;

(c)     manufacturing, producing, distributing, advertising, promoting, selling, or offering for sale any food product using the Barefoot Contessa recipes in connection with the CONTESSA mark;

(d)     using the Barefoot Contessa intellectual property, including, without limitation, the Food Product Trade Dress, the Frozen Dinner Trade Dress, the famous BAREFOOT CONTESSA and INA GARTEN trademarks, the copyrights in the photographs used in connection with the Frozen Dinner Trade Dress, and Chef Garten's name and likeness and the Barefoot Contessa name, which has come to identify Chef Garten, or any mark or design confusingly similar thereto in connection with the promotion, advertisement, display, sale, offering for sale, or distribution of any food product;

(e)     making any designation of origin, descriptions, or representations indicating or suggesting that Barefoot Contessa is the source or sponsor of, or in any way has endorsed or is affiliated with Defendants, or any food product manufactured, distributed, promoted, marketed, or sold by Defendants;

(f)     engaging in any conduct that tends to dilute, tarnish, or blur the distinctive quality of the Barefoot Contessa intellectual property, including, without limitation,

the Food Product Trade Dress, the Frozen Dinner Trade Dress, the famous BAREFOOT CONTESSA and INA GARTEN trademarks, the copyrights in the photographs used in connection with the Frozen Dinner Trade Dress, and Chef Garten's name and likeness and the Barefoot Contessa name, which has come to identify Chef Garten;

(g)   aiding or abetting any party in the commission of the acts specified in subparagraphs (a)–(f) above;

2.   Ordering Defendants to recall and destroy all existing inventory of the Infringing Products and any associated advertising, promotional, marketing, or other materials that include Barefoot Contessa intellectual property, including, without limitation, the Food Product Trade Dress, the Frozen Dinner Trade Dress, the famous BAREFOOT CONTESSA and INA GARTEN trademarks, the copyrights in the photographs used in connection with the Frozen Dinner Trade Dress, and Chef Garten's name and likeness and the Barefoot Contessa name, which has come to identify Chef Garten;

3.   Ordering Defendants to account to Barefoot Contessa for all gains, profits, savings, and advantages obtained by it as a result of its unlawful conduct, and awarding to Barefoot Contessa restitution in the amount of all such gains, profits, savings, and advantages;

4.   Awarding to Barefoot Contessa damages resulting from Defendant's unlawful conduct, including the amount by which Defendants were unjustly enriched, in an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 1117;

5.   Awarding to Barefoot Contessa Defendant's profits attributable to its unlawful conduct, in an amount to be determined at trial and increased in the Court's discretion pursuant to 15 U.S.C. § 1117;

6.      Awarding to Barefoot Contessa reasonable attorneys' fees, together with the costs and disbursements of this action;

7.      Awarding Barefoot Contessa punitive damages in an amount sufficient to deter other and future similar conduct by Defendants, in view of Defendants' wanton and deliberate unlawful acts; and

8.      Granting Barefoot Contessa such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Barefoot Contessa hereby demands a trial by jury of all issues so triable.

Dated: New York, New York
       February 17, 2015

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
       Lynn B. Bayard (lbayard@paulweiss.com)
       Aidan Synnott (asynnott@paulweiss.com)
       Darren W. Johnson (djohnson@paulweiss.com)
       Rachale C. Miller (ramiller@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Attorneys for Plaintiffs Barefoot Contessa Pantry, LLC, Ina Garten, and Ina Garten, LLC